The United States Court of Appeals for the Ninth Circuit is now in session. Good morning, and welcome to the Ninth Circuit. I'm Michelle Friedland, my chambers are here in San Jose, and I'm really happy to welcome you all to court in San Jose. Sitting with Judge Graber and Judge Schroeder from Portland and Phoenix, and yes, we're very happy to be here this morning. There are several cases submitted on the briefs. Castillo v. Garland, 20-70130 is submitted. Antonio Barrero v. Garland, 20-72125 is submitted. Gallegos-Arvalo v. Garland, 21-70596 is submitted. And the next case. And there's one more. Sorry, thank you for reminding me. One more. Consumer Direct v. Array, 22-55420 is submitted. And then we'll hear the remaining cases in the order in which they appear on the calendar. The first is Bolden-Hardge v. Office of the California State Controller, 21-15660. Each side will have 15 minutes. May it please the court, Jim Sonney on behalf of Plaintiff Breonna Bolden-Hardge. May I reserve three minutes for rebuttal? Thank you, Your Honor. For more than a century, Jehovah's Witnesses in America have bravely struggled to maintain a series of well-known religious commitments in the face of government pressure. Whether those commitments concern saluting the flag, engaging in military service, or signing oaths of allegiance, their path is a well-trod one, and to our nation's credit, a successful one. The success of Jehovah's Witnesses and the struggle is a bright light in the story of protecting American civil liberties. Sadly, defendants seek to turn back the clock on this time-honored tradition. Specifically, they revoked outright the job offer they made to Ms. Bolden-Hardge, a devout Jehovah's Witness, on learning of her need for religious accommodation when it comes to signing a loyalty oath. A need for accommodation that, again, is well-established in history and law, and is in fact readily and publicly afforded by other agencies across the state by statute or by practice. What's worse, defendants didn't just refuse to try to accommodate our client. They now seek to avoid even having to explain themselves at all by arguing they shouldn't have to answer her complaint, much less prove their various defenses to our claims. This court should reverse. Indeed, Ms. Bolden-Hardge is more than plausible. Can I ask you a question? In terms of the request for prospective declaratory and injunctive relief, why does the plaintiff have standing as she is not currently seeking a position? Well, for starters, she certainly has all the remedies under Title VII for damages against the employee. Exactly. But in terms of prospective relief, she is open to the job. She has refused the job. She moved on to another job and was accommodated in that job. But certainly, she is open to exploring the possibility. We made clear of that in our brief. Has she alleged that she is still applying for it? Is there anything in the complaint that talks about a continued interest in that job? We, I believe it's all other available equitable relief we'd be happy to amend. That's another point. I think that to the degree that there are any defects at all, we're happy to amend. So, to follow the train of logic from your previous comment, that your client can pursue damages under Title VII and under the state statutory claim, why would we have to reach the constitutional issues that you raise at this point if she can obtain relief from the statute? Well, Your Honor, we just want to maximize the opportunity for her to recover based on the civil rights violation that occurred. So, we are maintaining all these claims to ensure that she has maximum recovery on those points. Right, but I guess I'm asking whether there's a need for the court in the current posture of the case to opine on the ultimate merits issue about the constitutional claim. Your Honor, to the extent that we're at the motion to dismiss stage, we believe we've adequately alleged, on all of our claims, we've plausibly alleged claims to the extent that the constitutional claim would raise strict scrutiny as opposed to, under the Title VII, a harness and standard, which we believe is not an issue here in terms of the motion to dismiss because we're simply talking about whether or not we've plausibly alleged claims. So, we'd like to move forward on all of our claims, but they have different standards depending on which claim we're talking about. So, just to follow up on Judge Graber's question, it does seem like currently the constitutional claim may have a jurisdictional problem because it doesn't seem like you've alleged that your client is seeking to have this job in the future, which under our case law means she doesn't have standing for forward-looking relief. And I think there's sovereign immunity from everyone you've sued for damages on that claim. Is that right? Well, Your Honor, again, we'd be happy to amend. In terms of damages, well, we certainly have the Uzug Bunum, a recent case of the Supreme Court, allowing for nominal damages. But that still doesn't get around sovereign immunity. You can still have sovereign immunity from nominal damages, right? Yes, you may, but we have sued the director of the agency in official capacity as well as- Not only in their official capacity, right? Yes, yes, Your Honor. And we proffered to amend for an individual capacity claim because of the range of other accommodations that are granted by other agencies. So we've offered to amend in that way as well. Was that denied? I'm not quite sure I understand the record with regard to that. Your Honor, I don't believe the district- I think you offered it in your briefs. We did, and I don't believe the district court raised that or reached that, if I recall correctly. I don't think the jurisdictional- I shouldn't answer for you. I think that because the district court reached the merits, I don't think these jurisdictional issues were- all reached. Yes, there's a ruling from the bench- Maybe that doesn't explain it, but I don't think all of them were reached. Yes, Your Honor. And I think globally we're preserving and maintaining all of our claims. If we send it back, you're going to amend? Yes, Your Honor. Yes, Your Honor. And we- And again, as we've made clear in our briefs, we're happy to amend it if there's any defect at all. We simply want RJ in court. And as I said, given the stakes and the fact that there's these inconsistencies, and the fact that other agencies accommodate, we think we at least should be moving forward and move forward to having an answer. If I could return to the Title VII failure to accommodate claim, and as we pointed out in our- as we articulated in our briefs, we plead a prima facie case by alleging that defendants refused our client a job because of a conflict between her religious objection to signing a loyalty oath and defendant's insistence that she do so without any accommodation. The job was rescinded over this conflict. She made clear in several different ways, again, time-honored ways, that she had religious objections to the oath in terms of its implications for her commitment to her need to commit arms, or at least pledge to do so, and what defense means. Defense has an honored tradition in terms of what that- Can I pause you there to ask a couple questions about this? Sure. So, first of all, I understand that she doesn't want to swear this oath. Does she also have the same problem with affirming the oath, which seems to have been an option? It doesn't- whether it's swearing or affirming is not dispositive. The question is, what is the substance to which she is pledging? So she's committing herself to this oath or affirmation. Either way, it's problematic, as we alleged in our complaint. I wasn't sure you exactly addressed this affirming though, but what you're saying is that she has the same religious objection to affirming. That's right, Your Honor. Because of the content of the pledge to essentially support and defend the Constitution and laws of the United States and the state of California? Your Honor, the objection- well, first of all, the conflict, the fact that the job was rescinded over her objection to signing the oath, generally, is a conflict. Beyond that, to the degree to which- and the complaint explains this in paragraph 28- to the degree to which she would be swearing faith and allegiance to the state and swearing to defend it against all enemies, foreign and domestic. She believes that would require her to put her allegiance to the government over her allegiance to God and likewise commit her to taking up arms in defense of the state, all in violation of religious beliefs. That's in paragraph 28. She offered a statement as one possible accommodation, explaining what her views are because of these religious sensitivities, trying to clarify and accommodate in that way. That's not the only way- Can I ask a question on that? Sure, Your Honor. You very eloquently described the history of the witnesses in litigation in this country, but I am not familiar with the doctrine that defend means to take up arms. Is there- has that been discussed in the cases, or can you help me on that? Well, for starters, Thomas, Friedman, all say that religious beliefs protected by TELUS-7 need not be acceptable, logical, consistent, or comprehensible to others. Lawson, as this Court presumed a conflict in Lawson, in the EEOC's- Those cases say we don't have to question the belief that she can't take up arms. That's separate from whether this oath requires you to take up arms. Why can't we interpret the oath? For example, just let me give you an example. I have the same issue. Suppose the oath simply said that unless I'm ill, I promise to come to work on time, and somebody wanted to say, but I won't join the military. There's a disconnect, and so the question really is, why can't we interpret the oath as not covering that activity at all? Well, for starters, the pledge is to defend against all enemies, foreign and domestic. No such reassurances were offered by the state at the time when she said, I have this problem, so they didn't say, oh, don't worry, this is not the case. The interpretations that they offer are not plain from the face of the complaint, and in fact are in stark contrast with what the defendants say about the dangers that are posed. Now, as a legal matter, Thomas, the degree to which one is sensitive to one's involvement in defense, that's implicated there. The Attorney General's Office itself has allowed the insertion of unviolently and other accommodations. We cite several news articles. So we have enough in terms of a plausible claim to move forward that there's at least some confusion as to what this commitment means as a job policy in order to get this. Well, but my question was in the long jurisprudential history of the witnesses, has this issue been discussed as to an objection on the grounds of taking arms? The particular matter of what defense means, again, it doesn't say on the face of the complaint or the oath that it does not mean that. And in fact, this is a current pledge. That's not a doctrine of the religion that we can look to another case, to a case that discusses it as a doctrine of the religion. Well, we know that these objections have been raised by Jehovah's Witnesses and in fact accommodated by other agencies. We do know that. So that sensitivity has been respected and honored by the state in other situations. How do we know that? I'm sorry? How do we know that? Well, in our briefs, we cited several news articles. We've alleged that this is something that other agencies accommodate. Accommodate. Accommodate. Yes. Yes. So the conflict has been recognized. Do you need that aspect of the theory? I mean, I understood that there are two objections, really. And if we don't think the oath really requires taking up arms, does it matter to the other claim? Well, it doesn't eliminate the concern about potentially involving yourself in politics, which are... Well, I guess I thought the other objection was more like putting the Constitution above God or putting the Constitution above your religious beliefs. Some kind of other objection to prioritization. Yes, Your Honor. I apologize. I'm just running out of time. We're going to give you more time. Okay. Thank you. You're right. To the degree to which there are... In many ways, there are four conflicts. First is the, I cannot sign this oath because of my religion. Oh, sorry. No job. Okay. So for starters, we have that. Then you get into the particular objections. Yes, the degree to which this implicates her allegiance to Jehovah, that is something that is a conflict as well with the oath. Now, the issue on conflict is a prima facie case. So we then... And we've alleged the conflict in these various different ways. Then we get to, okay, can the defendant prove hardship as a defense? Or if we're talking about the First Amendment, how we established a substantial burden on religious exercise. We believe we have. We've laid that out in the case law. Bessard is very helpful on this in terms of tracking the various cases that say loss of job opportunity is a substantial burden. Then you get to strict scrutiny based on, or we've alleged that based on the exceptions that other agencies make. I have another question. Sure. So the oath clause in the Constitution, Article 6, Clause 3, I mean, would it be unconstitutional under the federal constitution for the state to not require this oath? I'm sorry, repeat. So the oath clause in the federal constitution says that all executive and judicial officers, both executive and judicial, both of the United States and of the several states, shall be bound by oath or affirmation to support this constitution. So does that require the state to have this oath? I'm not sure. I'm, in terms of whether or not they're required to have the oath under that clause, I'm not sure. But they certainly, to the degree to which they are making exceptions, to the degree to which Title 7 requires an accommodation. And under Abercrombie, we know that the failure to accommodate is an actionable, is an actual civil rights claim. So to the degree to which an accommodation might be required, I don't know, I don't think that speaks to that question, as well as the degree to which exceptions are made, then you have, and Bassar made this point in terms of strict scrutiny, if you're making exceptions, then you would need to meet strict scrutiny. So that clause of the federal constitution goes on to say, but no religious test shall ever be required as a qualification to any office. So it seems that the founders thought about how religion and oaths were going to work together. You can have an oath, but you can't have a test. Is there anything in the history of the amendments that says that the First Amendment was intended to change that oath clause? Well, in terms of a religious test, a religious accommodation, which is what we're talking about here, this is not a facial challenge. This is a request for an accommodation under Abercrombie. First Amendment claim is suggesting that there's a First Amendment right to not do this oath, but I'm just asking whether there's any history that supports that interpretation of the First Amendment, given that there's an explicit clause about this in the constitution. Well, we know that there are, well, to the degree to which we have exceptions that are made, we then have strict scrutiny. I'm not sure if I'm understanding the question correctly. I think it goes to your first theory as to whether there has to be an oath at all, rather than the content of the oath. Whether there has to be an oath at all, Your Honor? When you started ticking off your different theories, you said the first theory is she shouldn't have to sign, period, no oath or affirmation. And I think that's the theory that Judge Friedland's question is addressing. I understand. I understand, Your Honor. So I guess when I was articulating that, I was describing the conflict that's at issue. Then we move to whether or not it's a hardship or whether it's justified under strict scrutiny or under the undue hardship analysis. And that's where I think the question is whether or not it's required. I guess I'm asking even a more holistic question. So, like, your First Amendment theory holistically is there's a First Amendment right under the shall support the Constitution. So, holistically, there's a clause in the federal Constitution that talks about religion and an oath and says everyone has to do an oath. So I'm wondering how you reconcile your First Amendment theory with that clause of the Constitution. Well, on just our First Amendment theory, I would return to the First Amendment to the degree to which exceptions are made. The First Amendment theory would be that the First Amendment recognizes in those situations a right to religious accommodation. So, therefore, under Fulton, Tandon, the fact that you're making these exceptions triggers strict scrutiny. And if the government can demonstrate that they really have to have this, then they would meet that test. But we're not at that. We're at the pleading stage. And Your Honor's questions, I think, point to the fact that we need to move forward and to resolve these matters rather than just being resolved as a motion to dismiss at this stage. So we've taken you over your time, but I will still give you time for rebuttal. Let's hear from the other side. Thank you. Interesting case. Thank you. Thank you. Good morning, Your Honors, and may it please the Court. I am Kelsey Lynette on behalf of Pelley's, the California Office of State Controller, and Betty Yee in her official capacity as State Controller. So I heard two main arguments from Appellant's counsel today, primarily that we should go back to suss out the merits at the district court level. And while you said there was four conflicts, I'm still not sure exactly what the articulated conflicts are. But on the one hand, they're trying to argue that this oath is meaningful. Which it's not. It's very meaningful. And it is for the court to decide what the oath means, not for any person to place their subjective view on what the oath is. And in terms of what's been alleged, it makes no sense that there is a conflict. Bolden Harge has said that she would be willing to vow to uphold the Constitution of the United States. And so it is for the court to decide whether that presents an actual and present conflict. And we're not talking- Counsel, aren't we at an even earlier stage here? Because among other things, the district court did not allow an amendment of the complaint to cure some of the deficiencies. For example, suing the comptroller in her individual capacity as one example. So why should we even reach the merits if we think that there should have been permission to amend to try to deal with some of the jurisdictional and standing issues? The reason why amendment would be futile is because we have all the facts we need. The oath at issue is part of the Constitution. It's not up to the office of the state controller to decide whether or not to administer the oath, to agree to an amendment. Even if they were, hypothetically speaking, to agree to amend it or to modify it or allow her to waive it, that agreement would be invalid because it's the Constitution that prescribes this oath for all public employees. Are you talking about the California Constitution right now or the federal? The California Constitution. But there are allegations that exceptions have been made by others, modest exceptions, not as dramatic as the lengthy statement that was proffered in this case. But how does that affect the viability of the claims, at least under Title VII and perhaps the state statutory claim as well? Because any of those modifications that happened, if they happened, were unauthorized for the same reason that the office of the state controller can't modify the oath. It's very clear that it's this oath and no other oath. I think the case law you're relying on to say that because it's a law, the employer doesn't have to violate the law are about private employers. And it makes no sense to me that those cases would apply to the state itself, because you could imagine the state having the most offensive policy ever and then just passing a law that authorizes that most offensive policy. And now we've got a law that says that's what we have to do. That can't be right. And that's true. The California Constitution has already been reduced to the minimum and has been upheld as a constitutional requirement. The courts have already reviewed the oath itself as a valid requirement. So you may have a good argument that there's a compelling interest here, that it would be an undue hardship, all these things. But the allegation that there have been all these exceptions in other government agencies seems to raise a question about how compelling the interest is, how undue hardship it would be. Because if all these other agencies are making exceptions, why would it be so hard for your agency to make an exception? Those questions have already been answered in terms of this particular oath. And there's a wealth of cases that have looked— Do you have any case that says when five other agencies are making exceptions, the sixth agency doesn't have to? The argument is that whatever those other agencies did is not binding on this agency, because this agency has no power to question whether they can give the oath. This comes directly from the Constitution. Well, that goes back to your argument that if the State law is the State law, it gets you out of it. I don't think that could be right. You could amend—we could have a ballot initiative in California that amends the Constitution to say something completely unconstitutional under the Federal Constitution. It can't possibly be that that gets you out of the Federal claim. That might be true if there was—  It's not going to happen. But that said, from this date forward, only women can be employed by the State. Clearly, that isn't okay under the Federal Constitution. I would agree with that. And the difference is that here we have an oath that is almost verbatim the same as the Federal oath for Federal employees and has been tested in the courts. Not in the specific context, but it's the content of the oath and the action of requiring employees to take the oath, those questions have both been answered by the courts. But once other agencies—so they have alleged, maybe you can show the allegation is false, that the other agencies have made exceptions. Maybe you can show that there are millions of California employees and only three exceptions actually and show that these exceptions are, you know, so de minimis or something. Maybe you can show all those things. But at this point on the complaint, when all we can do is say whether the complaint states a claim, I'm having a lot of trouble understanding how this allegation about exceptions doesn't undermine all of the things that you say are so well established. Because I think the court only needs to look at the letter of the law. And the letter of the law allows for no individual exceptions. So to the extent that agencies made an exception, that was an unauthorized action by that state. Maybe, or maybe it was an interpretation to harmonize this provision with other federal constitutional provisions. We don't know which it turned out to be. Well, it's for the courts to harmonize the laws, not for the state agencies to decide what the law is. Well, couldn't—okay, imagine, imagine that— Well, if that's true, then your statement as to what the law is is no more binding than any other. If this—I mean, you've just said an agency can't say what the law is. Exactly. And so the California Constitution is clear on its face. You can look to the plain language that all public employees— But we've been around this. What if tomorrow—what if at the last election, the California voters put on the ballot, you know, voted through a ballot initiative that changed the California Constitution to say that only women can be employed by the state? This—it's a great hypo. There's no way that at that point, when all the men get fired, you could come in here and say, well, the California Constitution says we have to do this and there can't be exceptions. That just cannot be possible, that that would be the defense. I agree. And that would be a basis to invalidate that law. And so there's an order of operations here. First— The order of operations is the open question whether the First Amendment is an overlay to this kind of an oath requirement. That is the sort of the legal framework that we're looking at. It's not as plainly obvious as the hypothetical, but you still have to look at the requirements of the federal Constitution and how they affect, if at all, this provision of the state Constitution. I agree with Your Honor, and that is exactly what has been done already, that this oath has been—and words like it have been examined by the courts, like the Cole case in particular looked at the Massachusetts oath that had very similar language and held that it was constitutional, did not violate the First Amendment. Any case where someone says that the objection to the oath is religious, not just speech, but religious, and where the state has given other people exceptions and the court has still said there's, you know, whatever answer that the oath is valid for everyone and this claim fails? No, there is no case that it's held that, and so this would be a novel application in this area. But there's nothing novel about the notion of making an accommodation to religious beliefs. No, that is permitted, and that is exactly what the law that is being asked in the Constitution, the constitutional oath, is to uphold the law, and the law permits free expression of religion, which is, again, why there's no conflict, because it can— Except if religion has a problem with the oath. I mean, it's circular. It—so if one's religious beliefs were, I can't take an oath because of my strongly held religious belief, then there is a conflict. Perhaps there is a conflict put in that stark terms, but there is no actual conflict between a promise to uphold the law, which Boldenheart says she is willing to do, and doing her job. She admits that she is fully capable of doing all of the duties of her job, and those duties do not conflict with her religion, to the extent there is a conflict. It's this future conflict, and we can't be in the business of accommodating future speculative, vague, hypothetical conflicts. But if she says that it's the oath itself that is the problem, she can't say this show that the saying the oath itself has been treated by the state as so important that it passes all these defenses, undue hardship, compelling interest, et cetera? Those are all a low bar. At first, there's—we believe it'd be a rational basis test, and there is a legitimate interest. This oath is rationally related to the— Well, only if there are no exceptions, right? Under the First Amendment, don't we get to strict scrutiny if there are exceptions? If there are exceptions in the law, if there's a mechanism for exceptions. The Employment Division v. Smith case is still good law, and it clearly applies in this case where there aren't—there is no mechanism for individualized exceptions. What do we do with this allegation about the university system having an exception? That does not—it's not binding on the state agency. But it's part of the state. They're part of the state. So if the state isn't treating this oath as actually required for everyone, and it's giving secular exceptions, it's hard to see how you're not running into Tandon and other First Amendment cases that talk about exceptions or treating different secular things differently than religious things. The oath only allows for exceptions that the legislature creates. So it does not allow for other exceptions. Well, this gets back to the state law with the putting on the ballot, the gender discrimination. You can't just say the state law says this because you are the state. And I guess we're back to the same argument that then there would be a basis to invalidate the law itself. But as it stands, this law has not been invalidated. And it doesn't have exceptions on its face. Isn't that what this case is? She's basically trying to say this law is unconstitutional unless it has exceptions for people like me to accommodate with some other wording. That is a challenge to the state law, essentially. Isn't that what this is? Yes, but she concedes that it's constitutional. She doesn't have a problem with the law. She just has a problem with the application of the law. Well, she has a problem with the law insofar as it demands particular wording. And that is for the courts to decide. I mean, there is no accommodation for a personal preference for different words. This isn't about personal preference. This is about religious practice and belief. To me, it's not the same case as if someone just said, well, you know what? This is kind of old-fashioned grammar, and I really don't like it, so I'm going to revise it so that it's more in modern wording, more to my liking because I'm a literary whatever. Of course, that would be, to me, frivolous. But religious accommodation is not. This is a long-honored traditional oath that is important to the functioning of our government. If we can't have a minimal baseline commitment to the rule of law, then we don't have a functioning government. It undermines the public's trust. You may be able to show that eventually in this case. I think you might win this case if it goes forward, which seems like it might need to. But I don't understand how, given the allegations about exceptions, you can win at the motion-to-dismiss stage, especially under ASARCA, which says that affirmative defenses can't be considered at this stage. I mean, you're sort of stuck with the allegations. And it's hard to see how these arguments are so plain from her, from the face of her complaint. Because there hasn't been pled an actual conflict. I think the court can look at what the oath is requiring her, a promise to uphold the law. If she doesn't really have this belief, why did she not do the oath and take the job? That is a personal choice. Not everybody has to become a public employee. Not everybody has to take an oath. And it is worth careful consideration, because it is an important, sincere promise to uphold the law, not just the law as it is today, but the law as it evolves. I mean, are you basically asking us to assume that even though she's filed this complaint and says that she can't do the oath under her religion, that she really is just doing this to waste our time or something? I mean, she didn't take the job. She lost the opportunity. She's here in court now, or maybe she's not, but her lawyers are. I mean, why are they doing all this if she doesn't actually have a problem with the oath? I'm not questioning that her belief, her sincere belief that she has a problem with this. But it's for the court. There's sort of two different avenues. There's the legal analysis and there is her personal preference. She, of course, is free to choose or believe whatever she wants. But in the context of public employment and the oath requirement for a public servant, it's for the court to decide whether there's an actual conflict. Okay. I think we've used up your time, but we did give the other side more time. So if there's anything else you want a few minutes to talk about, you're welcome to. No, thank you, Your Honor. No, there was a discussion on the word defend, and we discussed this at length in the brief. So I would point you back to our briefs for a discussion on case law about the word defend and how it applies in constitutional oaths. And so our position is that this is a valid requirement that is not subject to an interpretation that there's a requirement that she bear arms. Thank you, counsel. Then we'll give you two minutes for rebuttal. Thank you, Your Honor. Real briefly, and we briefed this, and it's in our complaint, a commitment to the rule of law, any suggestion that somehow our client would not have a commitment to the rule of law is made clear in her accommodation request and our briefing. So I think that's important. We have this conflict of religious beliefs that we're trying to reconcile through accommodation. On the issue of the hypothetical question about what is the state ballot initiative, that, in fact, has kind of happened in the Rosenfeld case, in the 708 cases that we talked about, where you have, I think there was a weight requirement or maximum hours condition that the court said, no, you don't defer to state law on that. And on the oath in particular, we have Lawson, we have the EEOC 8513, we have Bassard. These are all state or municipal oaths where you have Title VII still regulating. You can't hide behind the state oath there. In terms of other agencies acting in an unauthorized manner, we obviously contest that. We've alleged that they, and frankly, we want to know why. That's why we want to move forward. There's a lot of action in this space, and we want to know why. In one of the articles that we cite in our brief, the UC system advises, in fact, advises with a sample declaration that this is not a promise to take up arms in contravention of my religious beliefs, and I owe allegiance to Jehovah. In other words, these sorts of accommodations are, in fact, provided by the state and by other agencies. And finally, Tandon and Folger. Can I ask you about the university for a second? I think Tandon tells us we look for equivalent activities risks. The university is not really enforcing the law in the way that a lot of other state employees are. So this rule of law consideration, I mean, I'm not sure it really matters whether your English professor is upholding the rule of law the way it matters whether a lot of other state agencies that are asking for people's taxes and other things are following the law. Why is the university equivalent? Well, it's a religious accommodation. So it's even more on, in terms of making an exception for a religious accommodation as opposed to secular analogs, I would argue that it's even more directly relevant to making an exception. In terms of the differences of employment, that would be a question to resolve on strict scrutiny to figure out, OK, is this really important in this setting as opposed to that setting to the person? That's what the constitutional analysis requires. So those questions are questions that would need to be proven on an affirmative defense by the employer to demonstrate why, for some reason, that's distinct. But at this early stage, we simply, you know, they couldn't carry the day. Can I ask you a different question, counsel? You're representing the plaintiff in this case on appeal, is that correct? Yes, Your Honor. And you are from the Stanford Legal Aid Clinic? Yes, Your Honor. Who on, if this case were to go back, who, you would not be representing the plaintiff? We would continue to represent plaintiff. The clinic would? Yes, we would, Your Honor. We have co-counsel, but we, you know, the goal is to, for us to provide this opportunity for students to learn by practicing in this space. Okay, thank you. Thank you. We've taken you over your time. Thank you both sides for the helpful arguments. This case is submitted.
judges: SCHROEDER, GRABER, FRIEDLAND